# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION a Texas reciprocal inter-insurance exchange, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRUIST BANK, | ) ) | Civil Action No. 2:22-cv-291 |
| Defendant. | ) ) | JURY TRIAL DEMANDED |
| | ) ) ) ) ) ) | |

## COMPLAINT

Plaintiff United Services Automobile Association ("USAA"), by its undersigned counsel, for its Complaint against defendant Truist Bank ("Truist"), formerly "Branch Banking and Trust Company" ("BB&T") and successor by merger to SunTrust Banks, Inc. ("SunTrust"), states as follows, with knowledge as to its own acts, and on information and belief as to the acts of others:

1.     This lawsuit is brought to address Truist's use of USAA's patented technologies that relate to remote check deposit for mobile banking systems. These patented technologies enable USAA to connect members of the military and their families across the globe to financial services. USAA developed these technologies as part of its mission to improve the financial security of its members. In its decades of serving the military community, USAA has worked to innovate in serving the needs of its members, including a lifestyle that can make getting to a bank branch difficult, particularly if they are out to sea or deployed outside the United States. USAA's innovations and investments are protected by multiple patents issued by the United States Patent & Trademark Office. Truist and its predecessors have chosen to use USAA's

patented technologies without permission and to use them for its own commercial gain. This lawsuit seeks remedies for Truist's misconduct.

## I.      THE PARTIES

2.      Plaintiff USAA is a reciprocal interinsurance exchange and unincorporated association organized under the laws of the State of Texas having its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. The USAA family of companies is dedicated to the financial well-being of members of the military and their families through the provision of insurance and banking products and services, and investing services. USAA does business in this judicial district, and through its website at www.usaa.com and USAA Mobile smartphone applications.

3.      On information and belief, Truist is a North Carolina state-chartered commercial bank, having its principal place of business at 214 North Tryon Street, Charlotte, North Carolina 28202. Truist does business throughout the United States, including in this judicial district.

## II.     JURISDICTION AND VENUE

4.      Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq*.).

5.      The Court has personal jurisdiction over Truist because it has substantial, systematic and continuous contacts with this judicial district. Truist has a regular and established place of business in the State of Texas and in the Eastern District of Texas, including operating several physical branches in this judicial district, and conducting business with customers residing in this judicial district both through its branches and its mobile banking services. Truist has committed acts of patent infringement and, as detailed below, contributed to or induced acts of patent infringement by others in this judicial district. Truist is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas.

6.      Venue is proper under 28 U.S.C. § 1400(b) because Truist has committed acts of infringement and maintains a regular and established place of business in this judicial district.

7.     Truist occupies several permanent, physical places within this District from which Truist carries out business. For example, Truist has physical branches in the following locations in this District: 1100 Village Parkway, Highland Village, TX 75077; 729 Hebron Parkway Suite 100, Lewisville, TX 75057; 1081 West Main Street Suite 101, Lewisville, TX 75067; 12292 FM 423, Frisco, TX 75033, 6251 Eldorado Parkway, McKinney, TX 75070; 3409 North Central Expressway Suite 100, Plano, TX 75023; 3434 Legacy Drive, Frisco, TX 75034; 6360 West Plano Parkway, Plano, TX 75093; 1005 West McDermott Drive, Allen, TX 75013; 409 Coit Road, Plano, TX 75075; 1707 South Loop 288, Denton, TX 76205; 5125 Preston Road, Frisco, TX 75034; 7900 Preston Road, Plano, TX 75024. Truist conducts business from these branches using physical equipment and employees located within the District. Truist advertises a full suite of business services offered at these branches, including deposit transactions.

## III.     BACKGROUND ALLEGATIONS

### USAA's Investments and Pioneering Innovations

8.     This is an action for infringement of patents awarded to research and development teams at USAA for their years of work developing and improving technologies that, among other things, allow banking customers to easily and conveniently deposit paper checks into their accounts from their smartphones – wherever they might be in the world.

9.     USAA has been serving present and former members of the U.S. military and their families since 1922 and is one of America's leading insurance and financial services companies. USAA offers its members a wide range of insurance and banking products and services, and investing services designed to help them meet their financial security needs. Headquartered in San Antonio, Texas, with offices in several states and Europe, USAA employs more than 35,000 people to provide for the financial well-being of over 13 million members.

10.     Unlike traditional banks, which usually maintain a network of brick-and-mortar bank branches or ATMs for customers to use, USAA typically interacts with its members remotely, either by mail, telephone, or with increasing frequency through its usaa.com website or USAA's mobile application. USAA's online and mobile presence is critical to its members'

well-being, particularly as USAA's military members are often stationed in distant locations around the world with limited access to traditional banking services.

11.    Driven by its mission to serve its members, starting in or around 2004, USAA invested substantial research and development resources into developing and implementing systems and methods that would provide USAA's members with a real-time capability to deposit a financial instrument from just about anywhere. These pioneering systems and methods resulted in a prototype developed by 2005, and the launch in 2006 of a consumer device remote check deposit system under the name Deposit@Home®. In 2009, USAA launched an application branded as Deposit@Mobile®, which today is available and used worldwide on devices such as iPhones, iPads and Android-based mobile devices. For the first time in banking history, USAA's patented systems allowed customers to deposit checks anytime, anywhere by taking photographs with consumer electronics that consumers actually own or can easily acquire, such as a mobile phone's digital camera.

12.    To date, USAA has invested many millions of dollars and thousands of employee-hours in the development and implementation of its mobile deposit technologies.

### The Asserted USAA Patents

13.    This action involves three of the patents that protect USAA's investments in its mobile deposit technologies: U.S. Patent Nos. 10,482,432 (the "'432 Patent"), 11,182,753 (the "'753 Patent"), and 9,818,090 (the "'090 Patent") (collectively, in this Complaint, "USAA Patents").

14.    The '432 Patent is entitled "Systems and methods for remote deposit of checks," and its inventors are Charles Lee Oakes III, Randy Ray Morlen, Bharat Prasad, and Troy Bartlette Huth. The application from which the '432 Patent derives its effective filing date was filed by USAA on October 31, 2006.

15.    The '753 Patent is entitled "Systems and Methods for Remote Deposit of Checks," and its inventors are Charles Lee Oakes III, Randy Ray Morlen, Bharat Prasad, and

Troy Barlette Huth. The application from which the '753 Patent derives its effective filing date was filed by USAA on October 31, 2006.

16.     The systems and methods taught by the '432 and '753 Patents solve technological problems associated with earlier systems used for capturing images of checks. These innovations allowed USAA, for the first time in banking history, to allow users to transform general purpose consumer devices that they have in their homes or are otherwise easy to acquire into a check image capture device. This had a profound impact on USAA's members and USAA's ability to accept deposit of remote checks, including because it eliminated the need for consumers (many of whom have limited means) to acquire or access specialized check processing equipment to deposit checks remotely.

17.     Among other things, the systems and methods claimed in the '432 and '753 Patents includes technological solutions to assist the customer in placing the digital camera at a proper distance from the check, present the photo of the check to the customer after the photo is taken with the digital camera, confirm that the mobile check deposit can go forward after optical character recognition is performed on the check in the photo in real time, validate the information determined from the check, check for errors before submitting the check for mobile check deposit, generate an image of the check that complies with requirements for electronic bank-to-bank image transfer, and ensure a secure connection. Additional details and improvements to mobile check depositing systems are further described in the patents.

18.     The '090 Patent is entitled "Systems and methods for image monitoring of check during mobile deposit," and were invented by Michael Patrick Bueche Jr., Bharat Prasad, Minya Liang, Reynaldo Medina, and Charles Lee Oaks III. The application from which the '090 Patent derives its effective filing dates was filed by USAA on August 21, 2009.

19.     The '090 Patent is directed to technological improvements to the remote check deposit process that enable commercial viability and improve performance including, for example, monitoring of the check with respect to a monitoring criterion, a feedback system that instructs the user regarding how to satisfy the monitoring criterion, and an automatic capture

system that works in concert with the monitoring system to automatically capture a check image when the monitoring criterion is satisfied. The addition of this system to remote check deposit systems dramatically increases the efficiency and performance of remote check deposit systems. The '090 Patents' improvements to mobile check deposit systems is further described in the specifications.

20.     Prior to USAA's inventions, checks were processed for deposit using specialized check scanning machines, which typically were located in bank facilities or leased to businesses for use in their back offices. High-tech equipment manufacturers sold a variety of check scanning machines that cost up to tens of thousands of dollars.

21.     The passage of the Federal "Check 21 Act" in 2003 increased the technical risks associated with check imaging. A report by Alogent entitled "The Client Business Case for Remote Deposit Capture" explained how, under Check 21, items would be returned due to poor image quality, either on the digital image, or the printed Image Replacement Document (IRD).

22.     The deposit of check images requires compliance with certain technical specifications, such as the "Specifications for Electronic Exchange of Check and Image Data," also known as DSTU X9.37-2003: a technical specification published by the Accredited Standards Committee X9, Inc. that spells out the file sequences, record types, and field formats to be used for the electronic exchange of check MICR line, associated check processing data and check images.

23.     An industry white paper entitled "Check 21: Controlling Image Quality at the Point of Capture" was published in 2004. The white paper acknowledges that one challenge facing remote deposit capture ("RDC") is that the human eye does not have the ability to distinguish between a check image that meets digital processing criteria and one that does not. For example, the white paper points out that what is an acceptable image to one person may be unacceptable to another. The white paper discussed the importance of ensuring that an acceptable image of a check is captured at the first point of entry to the check clearing process, as a check image with quality issues is likely to be unpayable and represents a liability to the bank. Further,

the report identified and discussed basic measurement metrics to ensure that a check image may be successfully cleared. Also in 2004, the FSTC, a financial industry technical group, published a report entitled "Image Quality and Usability Assurance- Phase I Project." The report discussed a number of factors such as image size, skew, lightness/darkness, focus, and noise, among others, that can lead to a failed image. Other publications discussing the perceived challenges of remote deposit include statements made in 2005 by CIT Engineering Team, who designs specialized scanners for the RDC process, that the RDC process is so delicate that small insights and/or small oversights are what distinguish an outstanding check scanning product from a mediocre one.

24.     When USAA introduced its patented technology to the market, it was met with both delight and concern because of its disruptive force. For example, in September 2009, AdAge published a report entitled "How Mobile Technology Is Changing Banking's Future," which observed that "USAA represents the bleeding edge of mobile banking technology" and described its pioneering system as a "technological development [ ] that allow[s] for deposits by iPhone and mobile payments." As another example, in June 2009, Celent published an article entitled "USAA's Mobile Remote Deposit Capture Initiative." The article stated that mobile RDC is so disruptive that many banks might pass on the idea. The report acknowledged that USAA's mobile RDC provided a compelling competitive advantage over other banks.

25.     By facilitating and improving remote mobile deposit, the innovations of the USAA Patents facilitate significant cost savings and provide many other financial benefits to banks. For example, in 2011, NCR published a white paper entitled "Mobile Remote Deposit Capture." The white paper reported that the average cost of processing a paper check transaction at a bank branch is $3.75, and that a mobile deposit costs just $0.14.

26.     As another example, in 2015, Celent published a report entitled "State of Remote Deposit Capture 2015- Mobile Is the New Scanner." The abstract of the report observed that mobile RDC was becoming the alternative to specialized check scanners, with banks racing to offer mobile RDC, which Celent predicted would have a profound effect on the branch channel.

The report also observed that USAA's systems result in a substantial improvement over the existing marketplace of complex, expensive check scanning machines and that by the date of the report mobile check image capture users outnumbered those using specialized desktop devices by more than 40 to 1. As another example, in 2016, an article entitled "Mobile Check Deposits-Pro Tips to Ensure They Go Smoothly" was published by an industry technology analyst on nerdwallet.com. The article acknowledged that mobile check deposit had become the most popular feature of mobile banking, estimating that there are about 87 million people in the U.S. depositing checks using mobile check deposit. The article also stated that autocapture provides a technological solution for capturing an image that allows even a first-time user to be successful.

27.     In a 2017 report entitled "2017 Mobile Deposit Benchmark Report," a leading technology consulting firm reiterated the importance of the autocapture feature to mobile deposit. Among other things, it stated, "auto-capture must now be treated as a must-have feature across all strata of the financial services industry." An industry expert hired by Wells Fargo testified in prior proceedings that the patented auto-capture techniques are now "widely acknowledged as the foundation for a successful mobile check deposit."

### Truist's Infringement

28.     Truist is one of the largest full-service consumer and commercial banking providers in the United States. According to Truist's 2021 Q4 Earnings Call, Truist customers now deposit on average nearly 2 million checks per month using their mobile devices.

29.     Truist's mobile remote deposit capture systems, including but not limited to mobile remote deposit offered under *Truist Mobile Remote Deposit*, and including predecessor systems offered under the BB&T and Suntrust brands, are referred to herein, along with any other infringing instrumentalities that include similar functionality, as the "Truist Mobile Deposit System." The Truist Mobile Deposit System includes the Truist Mobile App for iPhone, iPad, and Android devices, the mobile devices on which the Truist Mobile App is installed and run, and the Truist hardware and software systems that implement Truist's mobile deposit service.

30.     On information and belief, Truist develops the Truist Mobile App and makes it available to customers through various App Stores. Truist requires customers to download the Truist Mobile App in order to deposit checks remotely. Indeed, Truist requires users to use the infringing system in order to deposit checks to their Truist account via a mobile device, and provides terms and conditions governing their use. For example, Truist terms and conditions dictate that "[y]ou must agree to the terms and conditions of the software license agreements during the installation of the personal financial management software on your electronic device."

31.     Further, Truist controls the infringing Truist Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

32.     Truist touts that Truist Mobile Deposit allows users to "[d]eposit checks from anywhere, with just a few taps" and provides detailed instructions, including a virtual walk-through, to promote its use.

33.     Truist receives mobile check deposits from customers who, for example, download its application for iPhone or Android devices and use the application and device as instructed by Truist, including as detailed on Truist's website and required by its user guidelines. On information and belief, Truist also uses its Truist Mobile Deposit system internally, such as for testing and demonstrations.

34.     Truist did not release Truist Mobile Deposit until years after USAA had already implemented and released its patented technology to widespread adoption, demonstrating the commercial viability of USAA's patented technology.

35.     Truist was on notice and, on information and belief, had actual knowledge of its infringement of the USAA Patents before the filing of the Complaint, including because the USAA Patents are publicly known and have been widely publicized in the banking industry, including in major publications read by Truist employees and specifically referring to Truist.

36.     For example, in 2018 USAA filed two complaints against Wells Fargo for infringement of certain of USAA's mobile deposit patents. The first complaint, filed in June

2018, included claims for infringement of the '090 Patent. The second complaint, filed in August 2018, included claims for infringement of U.S. Patent No. 10,013,681, the parent to the '432 and '753 Patents (which had not issued at that time).

37.     As a further example, in 2020 USAA filed litigation against PNC Bank, NA alleging infringement of, among other things, the '432 Patent and the '571 patent (the parent of the '090 Patent). In 2021, USAA filed a second complaint against PNC, which included claims for infringement of the '681 patent (the parent to the '753 Patent).

38.     USAA's patent claims were widely discussed in the banking industry. As an example, the *American Banker*, a publication which describes itself as "the essential resource for senior executives in banking and financial services, keeping its users updated on vital developments and focusing sharply on their most important concerns" ran a series of articles reporting on the USAA lawsuits against Wells Fargo and repeatedly noted that in the opinion of the publication the USAA patents had significant implications for other banks using USAA's mobile deposit technology. These included, for example, a June 2018 article entitled "Is USAA vs. Wells Fargo the start of a broader patent war?" Wells Fargo was found, *inter alia*, to infringe the '090 Patents, and USAA was awarded $200 million in past damages. The verdict was also widely reported on in the banking industry. For example, a November 2019 article entitled "USAA won $200M from Wells Fargo in patent fight. Will others be on the hook?"

39.     Another article in the *American Banker*, published in January 2020, discussed the result of the second Wells Fargo lawsuit, in which Wells Fargo was found to infringe the '681 (which is the parent of the '432 and '753 Patents), and USAA was awarded $102.8 million in past damages. For example, the article reported "Wells Fargo has lost a second mobile deposit patent lawsuit brought against it by USAA" and noted that "other banks should be on alert if they use the same technology" and specifically referenced USAA's Deposit@Mobile product. Similar articles appeared in other major publications such as *Bloomberg* and *Business Insider*.

40.     Further coverage in *American Banker*, published in May 2022, entitled "USAA scores mobile deposit capture patent win against PNC," addressed the outcome of the suit

between USAA and PNC, stating that USAA was awarded $218 million in damages "over its claims that PNC Bank infringed four USAA patents related to remote check deposit technology." The article also specifically mentions Truist:  "To fight back, some banks, including Truist, have recently joined an anti-patent aggression group." On information and belief, Truist monitored its news coverage and was aware of this article.

41.     Some of the news coverage of USAA's mobile deposit patents even specifically references Truist Mobile Deposit, or that of its predecessors, BB&T and SunTrust. For example, *Consumer Reports*, a market intelligence publication covering commercial banking, published a July 2014 article entitled "Pros and cons of mobile check deposit" that stated the service that allows consumers to "[u]se your mobile banking app and smartphone camera to snap a picture of the front and back of a paper check, then electronically and securely deposit it into your account" was "introduced by USAA Federal Savings Bank in 2009." Consumer Reports. *Pros and cons of mobile check deposit*, (July 2014). The article specifically mentioned BB&T (now Truist). On information and belief, BB&T monitored its news coverage for mobile deposit.

42.     As another example, an article dated April 19, 2022 and entitled "Truist, TD join group that pushes back on patent aggression," from the American Banker notes that "USAA has sued Wells Fargo and PNC over their use of mobile deposit technology, a technology used by thousands of banks" and also contains a number of quotations from Truist's chief IP counsel, Michael Spring. On information and belief, Truist monitors its press coverage and read this article.

43.     In addition to the widespread coverage of USAA's lawsuits against Wells Fargo and PNC, USAA's Deposit@Mobile® technology has been well-known and publicized for years, and USAA receives widespread acclaim for its pioneering innovations in mobile deposit. For example, a 2020 report by Javelin Strategy and Research named USAA "as an overall 'Leader' in both mobile and online banking," and also evaluated BB&T (now Truist). Upon information and belief, Truist is aware of this and other acclaim for USAA's Deposit@Mobile®

products, including because it was widespread in the industry and because some of the press surrounding USAA also referred specifically to Truist.

44.     USAA is further informed and believes that Truist has actual and constructive knowledge of the USAA Patents as a result of, among other things, its awareness of USAA's Deposit@Mobile® products and USAA's patent marking. For example, USAA marks its Deposit@Mobile® products pursuant to 35 U.S.C. § 287 through the USAA mobile application. As an example, the Deposit@Mobile® mobile application contains a "United States Patents" section specifically listing the '432, '753 and '090 Patents by patent number.

45.     Further, to the extent that Truist contends it lacked actual knowledge of its infringement of any of the USAA Patents before the time of service of this Complaint, it was willfully blind by deliberately avoiding investigating USAA's patents or inspecting USAA's mobile check deposit application and/or instructing its employees not to investigate USAA's patents or inspect USAA's mobile check deposit application.

46.     As detailed below, Truist's conduct with respect to Mobile Deposit constitutes willful infringement of USAA's Patents. Truist's use of the USAA Patents is not licensed or authorized by USAA in any way.

47.     Truist has profited, and continues to profit, including by providing its infringing mobile deposit service to millions of Truist customers without USAA's permission and without any compensation to USAA, materially harming USAA and its members.

## IV.     FIRST CLAIM FOR RELIEF – '432 PATENT

48.     USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

49.     The '432 Patent, entitled "Systems and methods for remote deposit of checks" was duly and legally issued on November 19, 2019. A true and correct copy of the '432 Patent is attached as Exhibit A.

50.     USAA owns by assignment the entire right, title, and interest in and to the '432 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

51.     USAA is informed and believes, and on this basis alleges, that Truist, agents of Truist, and/or third parties acting under Truist's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '432 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, the Truist Mobile Deposit System. Truist controls the Truist Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

52.     For example, the Truist Mobile Deposit system through which Truist receives deposits includes a mobile device including Truist's downloaded app, which Truist provides to control check deposit by causing the mobile device to perform various functions such as instructing the customer to have a digital camera take a photo of a check, as illustrated for example by the following images from the Truist Mobile Deposit System:







53.     As another example, Truist Mobile Deposit System gives an instruction to assist in placing the digital camera at a proper distance away from the check for taking the photo.

54.     In addition, Truist Mobile Deposit System presents the photos of the check after the photos are taken with the mobile phone's digital camera.

55.     Truist Mobile Deposit System causes the mobile device to confirm that the mobile check deposit can go forward after optical character recognition ("OCR") is performed on the check in the photo, and causes the mobile device to check for errors before the submitting step.

56.     Truist also is inducing infringement of the '432 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell Truist Mobile Deposit System in the United States, or to import Truist Mobile Deposit

System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Truist Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Truist's actions will induce others to directly infringe the '432 Patent. Truist actively encourages, directs, and controls third parties, including its end users, to make and/or use Truist Mobile Deposit System in an infringing manner, including through Truist's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Truist has intentionally aided and encouraged third parties, including its end users, to use Truist Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '432 Patent, with the specific intent that those performing the acts infringe the '432 Patent.

57.     Truist also is contributorily infringing the '432 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Truist Mobile Deposit System for use in infringing the '432 Patent, constituting a material part of the invention, knowing Truist Mobile Deposit System to be especially made or especially adapted for use in infringing the '432 Patent. Truist Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

58.     As a result of Truist's infringement of the '432 Patent, USAA has been damaged. In addition, Truist's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Truist's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

59.     USAA is further informed, and on this basis alleges, that Truist's infringement of the '432 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed

above, Truist has had knowledge of the '432 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## V.     SECOND CLAIM FOR RELIEF – '753 PATENT

60.     USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

61.     The '753 Patent, entitled "Systems and Methods for Remote Deposit of Checks" was duly and legally issued on November 23, 2021. A true and correct copy of the '753 Patent is attached as Exhibit B.

62.     USAA owns by assignment the entire right, title, and interest in and to the '753 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

63.     USAA is informed and believes, and on this basis alleges, that Truist, agents of Truist, and/or third parties acting under Truist's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '753 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Truist Mobile Deposit. Truist controls the Truist Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

64.     For example, the Truist Mobile Deposit System through which Truist securely receives deposits includes a portable or mobile device that contains a memory and processor and which includes a downloaded software or app that controls or works with a digital camera:





65.     For example, the Truist Mobile Deposit System receives images of checks captured by the digital camera coupled to a customer's mobile device in a first electronic data format, such as jpeg.  In addition, on information and belief, the images of the check are received over a secure connection, such that the data communicated is inaccessible or indecipherable by unauthorized third parties.

66.     Additionally, the Truist Mobile Deposit System performs Optical Character recognition to determine information about the check, including information in the MICR line.

67.     For example, on information and belief, the Truist Mobile Deposit System generates a supplemental image of the check in a second electronic data format, such as TIFF.

68.     For example, the Truist Mobile Deposit System validates the information on the check, deposits the money into the consumer's account, and provides a confirmation message that the amount validated has been credited to the user's account.

69.     Truist also is inducing infringement of the '753 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell Truist Mobile Deposit System in the United States, or to import Truist Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or

causing to be supplied Truist Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Truist's actions will induce others to directly infringe the '753 Patent. Truist actively encourages, directs, and controls third parties, including its end users, to make and/or use Truist Mobile Deposit System in an infringing manner, including through Truist's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Truist has intentionally aided and encouraged third parties, including its end users, to use Truist Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '753 Patent, with the specific intent that those performing the acts infringe the '753 Patent.

70.     Truist is contributorily infringing the '753 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Truist Mobile Deposit System for use in infringing the '753 Patent, constituting a material part of the invention, knowing Truist Mobile Deposit System to be especially made or especially adapted for use in infringing the '753 Patent. Truist Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

71.     As a result of Truist's infringement of the '753 Patent, USAA has been damaged. In addition, Truist's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Truist's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

72.     USAA alleges that Truist's infringement of the '753 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As discussed above, Truist has had knowledge of the '753 Patent and its infringement thereof. Despite having this knowledge, Truist has

deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VI.    THIRD CLAIM FOR RELIEF – '090 PATENT

73.    USAA re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

74.    The '090 Patent, entitled "Systems and methods for image and criterion monitoring during mobile deposit," was duly and legally issued on November 14, 2017. A true and correct copy of the '090 Patent is attached as Exhibit C.

75.    USAA owns by assignment the entire right, title, and interest in and to the '090 Patent, including the exclusive right to seek damages for past, current, and future infringement thereof.

76.    USAA is informed and believes, and on this basis alleges, that Truist, agents of Truist, and/or third parties acting under Truist's direction and control, have committed and continue to commit acts of direct infringement of one or more claims of the '090 Patent literally and/or under the doctrine of equivalents, by making, using, selling, offering to sell and/or importing into the United States, Truist Mobile Deposit System. Truist controls the Truist Mobile Deposit System (including the customer's mobile device, via the downloaded mobile app) as a whole and obtains benefits from it.

77.    For example, Truist Mobile Deposit System includes a software application installed on a mobile device, such as a customer's smartphone, comprising instructions that, when executed by a processor, cause the processor to: monitor an image of the check in a field of view of a camera of a mobile device with respect to a monitoring criterion using an image monitoring and capture module of the mobile device; control a presentation device, such as the device's display, to present feedback information describing an instruction for satisfying the monitoring criterion; determining whether the monitoring criterion is satisfied based on the target document in the field of view of the image capture device; capture the image of the check with the camera when the image of the check passes the monitoring criterion. For example, the

software application will display instructions such as "Hold Steady," "Reduce angle," "Move closer," or "Use dark background."

78.     As another example, Truist Mobile Deposit System will provide the image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

79.     Truist is inducing infringement of the '090 Patent, in violation of 35 U.S.C. § 271(b), including by knowingly encouraging or aiding third parties to make, use, sell or offer to sell Truist Mobile Deposit in the United States, or to import Truist Mobile Deposit System into the United States, and/or in violation of 35 U.S.C. § 271(f)(1), by supplying or causing to be supplied Truist Mobile Deposit System in or from the United States, without license or authority from USAA, with knowledge of or willful blindness to the fact that Truist's actions will induce others to directly infringe the '090 Patent. Truist actively encourages, directs, and controls third parties, including its end users, to make and/or use Truist Mobile Deposit System in an infringing manner, including through Truist's website, advertisements, documentation/instructional material, customer support, application and feature descriptions, and in-application instructions. Truist has intentionally aided and encouraged third parties, including its end users, to use Truist Mobile Deposit System in the United States in a manner that it knows would infringe or have a high probability of infringing the '090 Patent, with the specific intent that those performing the acts infringe the '090 Patent.

80.     Truist is contributorily infringing the '090 Patent in violation of 35 U.S.C. § 271(c), by selling, offering to sell, and/or importing into the United States, and/or in violation of 35 U.S.C. § 271(f)(2), by supplying or causing to be supplied in or from the United States, Truist Mobile Deposit System for use in infringing the '090 Patent, constituting a material part of the invention, knowing Truist Mobile Deposit System to be especially made or especially adapted for use in infringing the '090 Patent. Truist Mobile Deposit System is not a staple article or commodity of commerce suitable for substantial non-infringing use.

81.     As a result of Truist's infringement of the '090 Patent, USAA has been damaged. In addition, Truist's infringing acts and practices have caused and are causing immediate and irreparable harm to USAA. USAA is entitled to recover for damages sustained as a result of Truist's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

82.     USAA is further informed, and on this basis alleges, that Truist's infringement of the '090 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to USAA pursuant to 35 U.S.C. §§ 284-285. As noted above, Truist has had knowledge of the '090 Patent and its infringement thereof, and yet has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for USAA's patent rights.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, USAA prays for judgment against Truist as follows:

A.      That Truist has infringed, and continues to infringe, each of the USAA Patents;

B.      That each claim of each of the USAA Patents is valid and enforceable;

C.      That Truist pay damages adequate to compensate USAA for its infringement, together with interest and costs under 35 U.S.C. § 284;

D.      That Truist be ordered to pay pre-judgment and post-judgment interest on the damages assessed;

E.      That Truist be ordered to pay supplemental damages to USAA, including interest, with an accounting, as needed, of all infringements and/or damages not presented at trial;

F.      That Truist's infringement is willful and that the damages awarded to USAA should be enhanced up to three times the actual damages awarded;

G.      That USAA be awarded damages for its costs, disbursements, expert witness fees, and attorneys' fees and costs incurred in prosecution this action, with interest, including damages for an exceptional case pursuant to 35 U.S.C. § 285 and as otherwise provided by law; and

H.     That USAA be awarded such other and further relief, including any and all injunctive and other equitable relief, as this Court deems just and proper.

## VIII.   DEMAND FOR JURY TRIAL

83.     Pursuant to Federal Rule of Civil Procedure 38(b), USAA hereby demands a trial by jury on all issues triable to a jury.


Dated: July 29, 2022                              Respectfully submitted,

                                                  **PARKER, BUNT & AINSWORTH, P.C.**

                                                  */s/ Robert C. Bunt*
                                                  _____


                                                  Robert C. Bunt
                                                  Texas State Bar No. 00787165
                                                  100 E. Ferguson Suite 418
                                                  Tyler, Texas 75702
Co-Counsel:                                       Tel. (903) 531-3535

**IRELL & MANELLA LLP**                           **Attorneys   for   Plaintiff   United   Services
                                                  Automobile Association (USAA)**

Jason Sheasby (CA #205455)
Lisa Glasser (CA #223406)
Rebecca Carson (CA #254105)
Anthony Rowles (CA #301209)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199